**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISON**

| | | |
|---|---|---|
| **BRENDA MARKS,** | § | |
| **Plaintiff** | § | |
| | § | |
| | § | **CIVIL ACTION NO** |
| | § | |
| **v.** | § | **3:12-CV-00042-G** |
| | § | |
| **LOCKHEED MARTIN CORPORATION,** | § | |
| **Defendant** | § | |

**BRIEF IN SUPPORT OF PLAINTFF'S RESPONSE TO SUMMARY JUDGMENT**

BRENDA MARKS ("Ms. Marks")  submits the following brief in response to motion for summary judgment submitted by Defendant, Lockheed Martin Corporation ("LM").

Date: Aug  3, 2012                          Respectfully submitted,


                                            _/s/_ Conswella Edwards_____
                                            Conswella Edwards, SBN:  24027305
                                            Edwards Law Office, PLLC
                                            1201 N. Watson Road, Suite 144
                                            Arlington, Texas  76006
                                            Telephone: 817-695-6788
                                            Facsimile:  817-704-0071


                                            **ATTORNEY FOR PLAINTIFF
                                            BRENDA MARKS**



**CERTIFICATE OF SERVICE**

I certify that on Aug 3, 2012, a copy of the foregoing was served upon all counsel of record electronically pursuant to the Northern District of Texas ECF rules and mailed via fax to the following fax number 214-969-1251:

**VIA FAX 214-969-1251**
Steve C. Schoettmer
Thompson & Knight LLP
1722 Routh Street, Suite 1500

Dallas, Texas  75201

_/s/_ Conswella Edwards

 Conswella Edwards, SBN:  24027305

# TABLE OF CONTENTS

# Contents

TABLE OF AUTHORITIES ......................................................................................... 5

I.    SUMMARY ................................................................................................. 6

   1.   Marks Discharge claims are not time-barred: .................................................. 6

   2.   Mark's age, race, sex and disability discrimination claims does not fail: ......................... 6

   3.   Marks' disprarate-impact claim survives: ................................................... 7

II.   STATEMENT OF UNDISPUTED FACTS ................................................................ 9

   A.   Brenda Marks applies for and is hired for a Level 1 position at LM. ............................. 9

   B.   Brenda Marks files her first EEOC Complaint on December 8, 2009. ............................ 9

   C.   Brenda Marks files her second EEOC Complaint on February 23, 2010. ......................... 9

   D.   Brenda Marks files her first Complaint with the DOL on November 20, 2010. ................... 10

   E.   Brenda Marks files her third EEOC Complaint on November 24, 2010. ........................ 10

   F.   Brenda Marks takes a Medical Leave of Absence ......................................... 11

   G.   Brenda Marks provides to Lockheed a return to work from her physicians. .................... 11

   H.   Brenda Marks informs Lockheed Martin that her Long Term Disability leave had been denied by
their third party administrator, CIGNA. ....................................................... 12

   I.   Lockheed Martin informs Ms. Marks her options upon expiration of short term disability ......... 14

   J.   Brenda Marks filed suit against Allstate, Cigna and Lockheed Martin. ........................ 15

   K.   Lockheed Martin's RTW Policy failed to accommodate Ms. Marks' disability causing Brenda
Marks to seek other employment. ............................................................ 16

      1.   Efforts to secure Long Term Disability from Lockheed Martin's third-party administrator ...... 16

      3.   Realizing she could not satisfy Lockheed's RTW policy after expiration of her STDL, Ms.
Marks began efforts to mitigate the termination by Lockheed Martin ............................ 17

      4.   Lockheed Martin's termination forced Ms. Marks to secure other employment which
exacerbated her injury. ..................................................................... 18

      5.   Marks ask Lockheed Martin to sign form to assist her personal injury attorney in determining
her lost wages after e administrative discharge in advance. ...................................... 18

III.  SUMMARY JUDGMENT STANDARD ................................................................ 19

   A.   Summary Judgment Standard ........................................................... 19

   B.   Weighing the Evidence ................................................................. 19

IV.   ARGUMENT AND AUTHORITIES .................................................................. 19

A.   Brenda Marks  Claims are not Time-Bared and Are Properly Before the Court...........................20

B.   Ms. Marks' violation of ADA and wrongful termination claims do not fail................................22

   1.   Lockheed Martin applied a "No Fault" leave policy in violation of ADA...................................22

   2.   Lockheed Martin failed to engage in the Interactive Process as required under ADA.............25

2.   Ms. Marks' Retaliation Claims do not fail ....................................................................................26

   1.   Engaged in a protected activity – Report of allegation involving benefit and pay, unfair
performance appraisal and racial discrimination.............................................................................26

   2.   Lockheed's management engaged in an adverse employment action.......................................27

3.   Ms. Marks' age, disability, gender and race discrimination claims do not fail. ..............................30

   a.   Burden of Proof ......................................................................................................................30

   1.   Ms. Marks can establish a prima facie case. ..........................................................................31

   2.   Lockheed management use the PADR as a pre-text to preclude promoting Ms. Marks due to her
race 32

V.   CONCLUSION ...................................................................................................................34

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). .................................................. 17

*Anderson*, 477 U.S. at 255 ................................................................................................. 17

*J. Geils Bank Employee Benefit Plan v. Smith Barney Shearson, Inc.* 76 F.3d 1245, 1251 (1st Cir. 1996) 17

*Leach v Conoco, Inc.* 892 S.W.2d 954, 959 (Tex.App.-Houston [1st Dist.] 1995 .................................. 17

M.D. Anderson Hosp. & Tumor Inst. v. Willrich, 28 S.W.3d 22, 24 (Tex.2000) .................................... 29

*Okoye v. Univ. of Texas Houston Health Sci. Ctr.,* 245 F.3d 507, 512-13 (5th Cir. 2001) ......................... 29

*Price Waterhouse v. Hopkins,* 490 U.S. 228, 244-45, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) ............. 28

*Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 147, 120 S.Ct. 2097 ..................................... 29

*Seaman v. CSPH, Inc.,* 179 F.3d 297, 301 (5th Cir.1999) ....................................................................... 27

*St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506-07, 113 S.Ct. 2742 ................................................... 29

*St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 511, 113 S.Ct. 2742 ........................................................ 29

*Taylor v. Phoenixville School Distr.* 184 F.3d 296, 315 (3d Cir. 1999) .................................................... 23

*Taylor v. Principal Fin. Group, Inc.,* 93 F.3d 155, 165 (5th Cir. 1996) ..................................................... 23

*Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 252-56, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). 28

*Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. at 254, 101 S.Ct. 1089 .............................................. 29

*Walker v. Sears,Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988) ....................................................... 17

## Statutes

Fed. R. Civ. P. 56(c) ................................................................................................................ 17

## Other Authorities

EEOC Enforcement Guidance at Q. 17 ...................................................................................... 21

*Id.* ............................................................................................................................................. 21

## I.    SUMMARY

Brenda Marks, a single mother was employed by Lockheed Martin Corporation (LM) in 2001 as a Cost/Schedule Analyst.  Each one of the statement in the attached Affidavit is true and correct and incorporated into this document by reference as Exhibit A.

During Ms. Marks' employment with Lockheed Martin, Lockheed Martin violated the American Disability Act (ADA) by wrongfully terminating her while out on Short Term Disability, failing to accommodate Ms. Marks and by failing to engage in the interactive process in regards to Ms. Marks' disability.  Further, Lockheed Martin when apprised of Ms. Marks' external complaints of cost overruns by LM as well as race, sex and age discrimination retaliated against Ms. Marks in violation of the Texas Labor Code, Chapter 21, Title VII of the Civil Rights Act of 1964 (Title VII).

Respondent's request for summary judgment must be denied on the following grounds:

1. **Marks Discharge claims are not time-barred:**    Ms. Marks timely filed her retaliation charge when she filed her 2/23/2010 charge with the EEOC.  Ms. Marks timely filed her wrongful termination and violation of ADA charge when she filed her complaint with the EEOC on 11/24/2010 and the Department of Labor (DOL) on 11/24/2010.  Each one of these charges was within the 300 days allowed by law.

2. **Mark's age, race, sex and disability discrimination claims does not fail:** Lockheed Martin's assertion that all of Ms. Marks' discrimination fail because Lockheed Martin had legitimate, non-discriminatory reasons for its action fall short because:

   a)  Lockheed Martin admits to not promoting Ms. Marks prior to October 2009.

   b)  Whether or not Lockheed Martin had a legitimate, non-discriminatory reason for its action of failing to promote Ms. Marks, failing to transfer Ms. Marks, failing to allow

movement by Ms. Marks to a different department, or whether these failures were the result of retaliation against Ms. Marks for her presenting ethical violation charge to the Ethics Department and presenting harassment allegations to management and the Ethics Department is a question of fact, to be determined by the trier of facts – a jury or judge.

c) Lockheed Martin fired Ms. Marks on June 16, 2010, seven (7) days after surgery and after receipt of two doctors' return to work notices, which indicated Ms. Marks would return to work July 12th or July 19th .  Lockhead's policy to fire employees when the employee's STD expires and the doctor's provides a RTW after the expiration of the STD and when its third-party administrator deny the employee's Long Term Disability violates ADA's requirement that employees accommodate employees' with a disability.   In Ms. Marks' case Lockheed Martin violated ADA when it:

   1) Failed to accommodate Ms. Marks' disability

   2) Failed to engage in any interactive process with Ms. Marks regarding her employment once she was out on disability leave

   3) Failed to inform Ms. Marks of any other alternatives available to her other than return to work on June 16, 2010, get LTD or be fired.

Each one of above creates a genuine issue of material fact Lockheed Martin firing of Ms. Marks violated ADA.

**3. <u>Marks' disprarate-impact claim survives:</u>**      Ms. Marks' has exhausted her administrative remedies as required by law.  She has filed complaints with the EEOC, and DOL from Lockheed Martins' action in February 23, 2010 in which efforts were made to secure Ms. Marks' resignation while she was out on Short Term Disability and

from June 16, 2010's wrongful termination and violation of ADA.  She has alleged that LM practices discriminates against the disabled.

## II.    STATEMENT OF UNDISPUTED FACTS

### A.  Brenda Marks applies for and is hired for a Level 1 position at LM.

On June 11, 2001, Ms. Marks having worked for Kelly Services for Government Defense

Contractors for three months on their Lockheed Martin contract, was hired by Lockheed

Martin in a Level 1 entry-level position.  Prior to receiving the position at Lockheed, Ms.

Marks had the following financial experience:

- -    4 years experience at Commerical National Bank

- -    2 years experience each at Environ, Inc and Wang Laboratories

- -    7.5 years experience at The Associates

- -    3.5 years experience at Dallas Airmotive, Inc, during this period was

      worked at Travel Connection for 5 years.

On December 13, 2003 Ms. Marks was promoted to a Level 2.  After 9 years at Lockheed

Martin, Ms. Marks' employment status remained a Level 2.

### B.  Brenda Marks files her first EEOC Complaint on December 8, 2009.

In the December 8, 2009 complaint Ms. Marks complained that since December 2, she

had been subject to disparate treatment by Lockheed Martin, when she was informed that

she could not participate during her lunch hour in the Women's Success Network or

company sponsored affinity group.  She alleged that the treatment was in retaliation for

the complaint she made to Ethics regarding her belief that she was being discriminated

against by Lockheed Martins' employees.

### C.  Brenda Marks files her second EEOC Complaint on February 23, 2010.

On February 23, 2010, Ms. Marks walked to the Dallas EEOC and filled out the U.S.

Equal Employment Opportunity Commission Intake Questionnaire in which she

indicated she wanted to file a charge against Lockheed Martin. Ms. Marks stated that her claim of discrimination was based upon race, sex, age, disability, retaliation and color. She alleged that Lockheed Martin treated Janette Felton a white female better than her. She indicated she was given Ms. Felton's job along with her own job with no overtime or promotion. She alleged that she was assigned to a Cost/Schedule Analyst position in May 2005, where she received sexual harassment from her supervisor, Ramona Ayers' husband.

**D. Brenda Marks files her first Complaint with the DOL on November 20, 2010.**

On November 20, 2011, Ms. Marks filed a complaint with the Department of Labor alleging violation of Executive Order 11246.  Because she alleged violation of Executive Order 11246 which is allegations of discrimination because of race, color, religion, sex or national origin, this complaint should have been dual filed as a charge under Title VII of the Civil Rights Act of 1964.

Ms. Marks further alleged that Section 503 of the Rehabilitation Act of 1973 based on discrimination because of and in spite of her disability.  This complaint too was to be dual filed as a charge under the American Disabilities Act.  The acts she alleged Lockheed Martin took or failed to take because of race, color, religion, sex, national origin, disability was hiring, termination, wages, promotion, demotion, seniority, harassment, job benefits, job assignment, training and apprenticeship, retaliation, accommodation to disability and intimidation.

**E. Brenda Marks files her third EEOC Complaint on November 24, 2010.**

On November 24, 2010 Ms. Marks sent her third complaint to EEOC when she contacted Katherine Perez, EEOC Regional ADR Coordinator.  Ms. Marks indicated she wanted to report Lockheed for overrunning in overhead costs without accepting her resolution to

rectify those overcharges in Employee training.  Ms. Marks indicated it was her desire to retire from Lockheed Martin.  Ms. Marks indicated that she was sending this [letter] to get support from all governmental agencies based upon the termination date of 6/15/10 for absence from work.

In response to that letter,  Ms. Perez indicated she would be forwarding her information to Belinda McCallister, Intake Supervisor.

### F.  Brenda Marks takes a Medical Leave of Absence

On December 16, 2009, Ms. Marks submitted an Employee Request for Leave of Absence form, requesting a leave of absence beginning December 16, 2009.  Her primary care physician indicated a return to work of December 24, 2009.  As a result of Lockheed Martin's leave policy, Ms. Martin short term leave of absence ran concurrently with Family Medical Leave Act. Ms. Marks' short term leave of absence ended on June 15, 2010.

### G.  Brenda Marks provides to Lockheed a return to work from her physicians

**May 7, 2010** – Ms. Marks contact LMESC requesting that they update her return to work to July 19, 2010.  Dorian, the LMESC representative informed that her long-term disability claim was currently in attending status.  Ms. Marks inquired what to do after June 16th and was informed to deal with CIGNA. *App*. 118

**May 17, 2010** - Prior to the June 9th RTW from Dr. Burkhead, Dr. Bunnell sent to Lockhead a return to work of July 19, 2010. (Exhibit 237).

**June 8, 2010** - Ms. Marks sent to Nurse Robbie Carter, a return to work with a return to work as undetermined.  Nurse Carter indicated she would forward the request for extension of leave to the Service Center for approval.  (Exhibit 230).

**June 9, 2010 -** Ms. Marks had shoulder surgery and on June 9, 2010, Ms. Marks' surgeon, Dr. Burkhead sent to Lockheed Martin a return to work scheduled for July 12, 2010. (Exhibit 239)

**June 14, 2010 -** Ms. Marks sent a letter to Paula Bullock, Nurse Robbie Carter and Laura Loschiavo informing them that her surgery was performed on June 9, 2010 and that her follow up and therapy was scheduled through July 16, 2010. (Exhibit 232)   Lockheed failed to grant this request for accommodation.  Neither Ms. Bullock, Nurse Carter or Ms. Loschiavo responded to this email.

### H. Brenda Marks informs Lockheed Martin that her Long Term Disability leave had been denied by their third party administrator, CIGNA.

Lockheed Martin was informed of the denial of her LTD by Ms. Marks on May 20, 2010.

The LMESC representative Patrick Blowers explained the process after denial of LTD to Ms. Marks.  He indicated:

Patrick:          *...What that means to you, though, is since your short-term disability is going to be ending in June, if CIGNA hasn't, you know, reversed their decision based upon the appeal by that point in time, if you haven't returned back to work, then your termination will be processed after your short-term disability exhausts.  Now, in the event CIGNA does in turn approves your long-term disability, then what would happen s retroactively we would need to reverse that termination and place you on an approved long-term disability status.  But, with the long-term denial there, if they have not, you know, if the appeal hasn't been won prior to*

> *your short-term disability ending, then when you[r] short-term disability does end, if you've not returned to work, a termination will be processed, which would in turn cancel all of your benefits and only in the event you end up being approved for the long-term disability would we be able to go back retroactively and, you know, put you on an approved long-term disability status and reinstate your benefits, as well.  App. 120.*

Patrick:      *...if the appeal is not won prior to June 16th – that would be the day you go into a long-term disability status – if they have not approved your ling-term disability, then at that point in time termination will be requested unless, of course, you are able to return to work.  App. 121*

On June 15, 2010 Ms. Marks spoke with Lisa regarding her long-term disability and whether there was any type of grace period for her health insurance.  *App. 124*

Lisa:      *... well it shows that today's your last day eligible for short-term disability, so that can't be extended.  Have you been released to return to work?*

Marks:      *No*

....

Marks:      *So if I have to go to the doctor on Friday, what am I going to do?*

Lisa:      *Well, I can't really answer that.  Your benefits will cancel.  There's no way around that if your short-term disability runs out and your long-term has been denied.*

June 18, 2010 Ms. Marks again contact LMESC inquiring the date that the Leave and Disability system shows she will return to work? *App.* 126 -127.

Dorian:         *Yes? We did have a tentative return to work date for you for June 16th.  We were notified that your long-term disability claim was denied.*

Marks:          *Okay. So now what?*

Dorian:         *Because your claim for long-term disability was denied and you have not returned to work, it is the company policy to administratively terminate.*

Marks:          *Okay.*

Dorian:         *So at this point, you would need to speak with HR....*

Marks:          *Okay.*

Dorian:         *Alright? So, as of right now, because your claim was denied, it's the policy to administratively terminate you.*

## I.  Lockheed Martin informs Ms. Marks her options upon expiration of short term disability.

On February 8, 2010, Ms. Marks contacted LMESC regarding the amount of time an employee have on a leave.  In speaking with Patrick Blowers she was informed June 15 is the last day of short-term disability. *App.* 104.

Brenda:         *Ok, and what happens after June 15?*

Patrick         *After June 15 you would need to go into a long-term disability status or return back to work.  If, let me just a look here if you have long-term disability as a benefit.  Ok, in your situation June 16 would be the first day that you're without short-term disability, so you would either need to go into an approved long-term disability status, pending long-term disability status, or have returned to work. If you have not filed a claim for long-*

*term disability and was unable to return back to work, or if you filed a*

*claim and were denied, the approval of long term disability and do not*

*return to work, then you would be terminated effective June 16.   In the*

*event that if say you were terminated as a result of a denial for long-term*

*disability you would be able to appeal that decision. App. 104*

Brenda:          *Ok, so after June 15 I will be terminated if I don't have it approved?*

Patrick:         *If you don't return to work, don't have it, if you're denied, or you never*

*filed a claim…. App. 105*


**J.   Brenda Marks filed suit against Allstate, Cigna and Lockheed Martin.**

1.   **Allstate -** On April 9, 2009, Ms. Marks left from work at Lockheed Martin to attend a

tutoring session sponsored by Lockheed Martin at an elementary school in Mansfield,

Texas.   Mina Kelly an employee of Lockheed Martin while leaving Lockheed Martin

struck Ms. Marks from behind.   This accident caused injury to Ms. Marks' back, neck,

shoulders and spine. Allstate Insurance Company refused to pay Ms. Marks' claim.   Ms.

Marks filed a lawsuit seeking personal injury damages.

2.   **CIGNA -** When CIGNA ("LINA") wrongfully denied Ms. Marks' long-term disability,

Ms. Marks filed a lawsuit for failure to pay her justly owed long-term disability claim.   A

settlement was reached solely for Ms. Marks' cause of action against LINA for its failure

to pay her LTD as required under the LTD Plan administered by LINA.

3.   **Lockheed Martin -** On June 16, 2010 Lockheed Martin wrongfully terminated Ms.

Marks.   Ms. Marks filed a claim against Lockheed Martin Corporation ("Lockheed") for

violation of the ADA, wrongful termination, retaliation and discrimination as alleged in

Ms. Marks' complaint.

### K.  Lockheed Martin's RTW Policy failed to accommodate Ms. Marks' disability causing Brenda Marks to seek other employment.

Beginning February 8, 2010, Ms. Marks was consistently told she would be terminated if she did not go into an *approved long-term disability status, pending long-term disability status, or have returned to work. (App 104).*

### 1.  Efforts to secure Long Term Disability from Lockheed Martin's third-party administrator

In an effort to prevent termination, between, March 29, 2010 to January 14, 2011, Ms. Marks filed, was denied and then submitted several appeals to CIGNA Lockheed Martin's third-party administrator in her efforts to overturn their denial of her LTD.

1) *CIGNA acknowledged receipt of Ms. Marks LTD application – Mar 29, 2010 (Exhibit 106)*

2) *CIGNA sends Ms. Marks a letter informing her that their records shows she returned to work on March 23, 2010 (although not correct).  Also, their records show she would not be eligible for LTD until June 13, 2010 – Apr 20, 2010 (Exhibit 109)*

3) *Ms. Marks again report claim of Long Term Disability – Apr 21, 2010*

4) *Ms. Marks claim is denied and closed – May 20, 2010*

5) *Ms. Marks Appealed CIGNA's LTD denial – May 24, 2010 (Exhibit 87)*

6) *Ms. Marks appealed CIGNA's denial of her appeal of CIGNA's denial – Jun 9, 2010*

7) *Ms. Marks appealed CIGNA's denial of her appeal of CIGNA's denial and is again denied. – Jul 22, 2010 (Exhibit 108)*

8) *Ms. Marks reports CIGNA to the Texas Insurance Board – Oct 21, 2010 (Exhibit 16)*

9) *Ms. Marks reports CIGNA to the Maryland Insurance Board – Dec 10, 2010 (Exhibit 18)*

10) *CIGNA reaffirms denial of Ms. Marks LTD denial – Jan 14, 2011 (Exhibit 93)*

**2. Ms. Marks was precluded from returning to work by Lockheed Martin's RTW policy which failed to accommodate Ms. Marks**

Lockheed Martin's policy prohibited Ms. Marks from returning to work without a release from her treating physician that certified her fitness for duty to return to work. *App.* 46

Lockheed Martin's policy explicitly stated Ms. Marks would not be allowed to return to work without an appropriate medical certification from her treating health care provider. *App.* 46.

Lockheed Martin's policy defined the phrase "returning to work" as a full-time employee returning to work on a full-time basis, and a regular part-time employee returning to work on his or her regular full schedule. *App.* 46

After Ms. Marks' surgery, Ms. Marks' primary care physician and her surgeon both agreed that Ms. Marks' return to work date would be after June 16, 2010.  (Exhibits 237 and 239).

**3. Realizing she could not satisfy Lockheed's RTW policy after expiration of her STDL, Ms. Marks began efforts to mitigate the termination by Lockheed Martin**

Ms. Marks began seeking outside employment and was tentatively offered employment with Fort Worth Independent School District, pending the results of the Criminal Background Check and reference Check.

On June 9, 2010, Ms. Marks contacted LMESC to confirm her approved leave and she was informed the approved leave was December 16, 2009 through June 15, 2010. *App.* 123.  Then again on June 15, 2010, Ms. Marks contacted LMESC inquiring whether any grace period applied to her health insurance because the last day of her short-term

disability was the middle of the month.  (App 124).  Even on June 18, 2010 Ms Marks

contacted LMESC indicating she was checking to see when is the date that you [LMESC]

show I will return to work. (App 126).  LMSEC informed Ms. Marks because her claim

for long-term disability was denied and she had not returned to work, it is the company

policy to administratively terminate.  (App 126).  Realizing she had no recourse but to

take the job at FWISD, Ms. Marks on July12, 2010, started work at FWISD.

**4. Lockheed Martin's termination forced Ms. Marks to secure other employment
    which exacerbated her injury**

According to Ms. Marks' primary care physician going to work at Fort Worth Independent

School District exacerbated Ms. Marks' injury. (Exhibit 82).  Similarly, Dr. Burkhead, Ms.

Marks' surgeon indicated that the work at FWISD exacerbated Ms. Marks' pain. (Exhibit 83).

**5. Marks asked Lockheed Martin to a sign form to assist her personal injury attorney
    in determining her lost wages after the administrative discharge in advance.**

On June 10, 2010, Ms. Marks emailed Paula Bullock, requesting Ms. Bullock complete

and sign the enclosed form.  *App*. 305. The purpose of the form was to assist Ms. Marks'

Personal Injury attorney in the determination of Ms. Marks' lost wages once she was approved

for long term disability.  The amount of lost wages was to be calculated using 40% because if

Ms. Marks would have been awarded LTD she would have received 60% of her wages starting

June 16, 2010.  *App*. 305.

She requested the lost wages be determined from June 16, 2010 because that was the date

the LTD was calculated to start. *App*. 305.  Ms. Marks indicated in her communication to Ms.

Bullock that currently, my return to work date is 7/12/2010, based upon my follow up visit. *App*.

305.

## III.   SUMMARY JUDGMENT STANDARD

### A.   Summary Judgment Standard

Although summary judgment is proper in a case where there is no genuine issue of material fact, this is not a case in which the court should grant summary judgment[1].  A defendant who seeks summary judgment on a plaintiff's cause of action must demonstrate the absence of a genuine issue of material fact by (1) submitting summary judgment evidence that negates the existence of a material element of plaintiff's claim or (2) showing there is no evidence to support an essential element of plaintiff's claim.[2]  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."[3]

### B.  Weighing the Evidence

When weighing the evidence on a motion for summary judgment, the court must decide all reasonable doubts and inferences in the light most favorable to the non-movant.[4] The court cannot make a credibility determination in light of conflicting evidence or competing inferences.[5] As long as there appears to be some support for the disputed allegations such that "reasonable minds could differ as to the importance of the evidence," the motion for summary judgment must be denied.[6]

A summary judgment that disposes of the entire case is proper only if the defendant can show the plaintiff could not succeed on any theories pled.[7]

## IV.   ARGUMENT AND AUTHORITIES

---

[1] Fed. R. Civ. P. 56(c)

[2] *J. Geils Bank Employee Benefit Plan v. Smith Barney Shearson, Inc.* 76 F.3d 1245, 1251 (1st Cir. 1996); see *Celotrex Corp.,* 477 U.S. at 322-23, 106 S. Ct. at 2552-53.

[3] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

[4] *Walker v. Sears,Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988).

[5] *Anderson*, 477 U.S. at 255.

[6] *Id.* at 250

[7] *Leach v Conoco, Inc.* 892 S.W.2d 954, 959 (Tex.App.-Houston [1st Dist.] 1995

**A.  Brenda Marks  Claims are not Time-Bared and Are Properly Before the Court.**

On December 16, 2009, Ms. Marks went out on Short-Term Disability due to chronic shoulder pain, back pain, neck and arm pain, and severe depression.  On June 16, 2010 Lockheed Martin Corporation in violation of the American Disability Act wrongfully terminated her while she was out on short-term disability, after having had surgery on her shoulder on June 9, 2010. Lockheed Martin failed to accommodate Ms. Marks after both of Ms. Marks' primary care physician and her surgeon submitted to Lockheed Martin a Return to Work date of July 12th  and July 19th.

Despite her nineteen years of relevant experience she was hired in at a Level 1, when individuals with comparable experience were hired in at a Level 2 or Level 3.  After several years of no promotion, Ms. Marks began to seek out promotion opportunities.  She discovered the doors were slam shut.  She began to raise complaints with Lockheed's internal ethics department in Dallas, Texas.  Along the identical time Ms. Marks begin to seek out ways to promote her skill-sets, talents, abilities, knowledge etc.  One of the activities Ms. Marks engaged was as a volunteer with Lockheed's Mentoring and Tutoring program. On April 2009 while on the way to the Tutoring Program in Mansfield, Texas, Ms. Marks was rear-ended by Mina Kelly, a Lockheed employee.  This accident caused Ms. Marks to experience tremendous pain in her back, neck, arm, shoulder and head.

Combined with her physical pain and the stress on her job Ms. Marks became severely depressed.  After several years of attempting to persuade Lockheed to correct what she determined to be discriminatory practices and having achieved no results, Ms. Marks sought outside help from the Dallas Equal Opportunity Employment Commission (EEOC) on December 8, 2009.  In this complaint, Ms. Marks alleged Lockheed Martin discriminated against her racially and sexually, and retaliated against her because she raised ethical complaints.  EEOC

opened the complaint and closed the complaint on December 8, 2009.  Ms. Marks received a Right to Sue letter on December 8. 2009.  Ms. Marks sought legal advice from Rob Wiley, a Dallas attorney.

In February 23, 2010, Ms. Marks walked into the Dallas EEOC office and again completed an Intake Questionnaire in wished she indicated she which to file a complaint against Lockheed.  She did not receive a right to sue letter as EEOC did not have a record of this complaint.

On June 9, 2010, surgery was performed by Dr. Wayne Burkhead on Ms. Marks' shoulder.  On June 9, 2010, Dr. Burkhead filled out a return to work form on Ms. Marks' behalf. On June 15, 2010, Ms. Marks' STDL was exhausted and on June 16, 2010, Lockheed Martin violated the American Disability Act and Ms. Marks was wrongfully terminated.

Ms. Marks on November 20, 2010 contacted the Department of Labor and filed a complaint alleging violation of Executive Order 11246 and Section 503 of the Rehabilitation Act of 1973.  (See Exhibit 241)  This complaint was to be dual filed under Title VII of the Civil Rights Act of 1964.  Also, because she alleged Disability violation the complaint was to be filed under the American Disability Act.  The DOL complaint is timely for both DOL and the EEOC.

On November 24, 2010 Ms. Marks sent an email to EEOC Katherine Perez regarding her problem with Lockheed indicating she was sending this to get support from all governmental agencies based upon the termination date of 6/15/10 for absence from work.  (See Exhibit 242) Ms. Perez indicated she would be forwarding Ms. Marks' information to Belinda McCallister the EEOC Intake Supervisor, who would have an investigator get in contact with Ms. Marks.  Ms. Marks was provided a right-to-sue letter on June 26, 2012, when EEOC indicated the December 13, 2011 Dismissal and Notice of Rights was in error. (See Exhibit 240).   The Dismissal of

December 13, 2011 incorrectly stated that the charge was not timely filed with EEOC.   The

EEOC acknowledge that Ms. Marks had in fact contact them via email on November 24, 2010,

with a minimally sufficient charge regarding her termination and a right-to-sue letter was

provided to Ms. Marks. (See Exhibit 240). The November 24, 2010 complaint is timely for the

EEOC.  Ms. Marks' claim is not time-bared and is properly before the court.

**B.   Ms. Marks' violation of ADA and wrongful termination claims do not fail.**

Ms. Marks was administratively discharged in 2010 in violation of the American Disability

Act. Lockheed Martin indicates they have a legitimate, non-discriminatory, non-retaliatory

reason for administratively terminating Ms. Marks' employment on June 16, 2010, due to her

exhaustion of her available short-term disability leave (STDL) and she did not pursue and obtain

any additional leave. *App*. 130-31, 136.

1.   Lockheed Martin applied a "No Fault" leave policy in violation of ADA

According to Lockheed Martin, Ms. Marks exhausted her six-month short term leave.  They

argue that CPS-534 calls for an administrative termination if an employee exhausts the

maximum amount of STDL, but does not qualify for EML (for example, because his or her LTD

claim has been denied), does not return to work and does not request approval for and obtain

additional unpaid personal leave.  However, according to ADA and EEOC guidelines this "No

Fault" leave policy, under which employees are automatically terminated after they have been on

leave for a certain period of time, are unlawful under the ADA.  The EEOC Enforcement

Guidance states:

17. May an employer apply a "no fault policy, under which employees are automatically terminated after they have been on leave for a certain period of time to an employee with a disability who needs leave beyond the set period.[8]

No.   If an employee with a disability needs additional unpaid leave as a reasonable accommodation, the employer must modify its "no fault" leave policy to provide the employee with the additional leave, unless it can show that (1) there is another effective accommodation that would enable the person to perform the essential functions of his/her position or (2) granting additional leave would cause an undue hardship.  Modifying workplace policies, including leave policies, is a form of reasonable accommodation.[9]

Lockheed's position is that if the leave policy is applied across the board there is no discrimination or violation of ADA because the policies generally apply to anyone on leave, whether or not they have a covered disability.  This is opposite of the EEOC who is mandate by Congress with the enforcement of the American Disability Act position.   EEOC's position is modifying workplace policies, including leave policies is a form of reasonable accommodation.

Ms. Marks exhausted the maximum amount of STDL available to her and Lockheed Martin's LTD third-party administrator denied her LTD, although their notes indicated she was disabled. And, between Feb 2010 and Jun 2010 in twelve (12) **recorded** conversations with Lockheed Martin Employee Service Center (LMESC), Ms. Marks was informed that the only option available to her on June 16, 2010, the day after her STDL expired was:  Lockheed did not modify their leave policy, nor did they provide another effective accommodation that would enable Ms. Marks to perform the essential functions of her position.  It was reasonable for an employer to

---

[8] EEOC Enforcement Guidance at Q. 17.
[9] *Id..*

wait for an employer to recover from surgery. Lockheed did not accommodate Ms. Marks. When she could not satisfy the following leave policy, they fired her.

   a) Be on either LTD or have a pending LTD appeal (to be eligible for EML)

   b) Return to work

   c) Be administratively terminated without severance eligibility.

It did not matter that Ms. Marks had surgery seven (7) days before the June 16, 2010 termination date. She was terminated under Lockheed's No Fault leave policy.

Ms. Marks sought accommodation and was denied. She submitted her return to work form to Robbie Carter, Lockhead Martin's nurse in their Medical Dept indicating she was going to have surgery on June 9, 2012 and her return to work date was anticipated per Dr. Bunnell as being 7/19/10 and per Dr. Burkhead as being 7/12/10. She contacted LMESC and provided them the RTW date of 7/19/2012. She emailed Paula Bullock (Medical Dept) and Laura Loschiavo (HR) an email in which she indicated her return to work would be 7/12/10.

On June 8, 2012, Ms. Marks sent Robbie Carter another RTW from her surgeon indicating the RTW was undetermined. This was due to Ms. Marks having an operation and he did not know what he would find. However, her return to work was never indefinite. Ms. Carter sent to Ms. Marks an email indicating she was sending her RTW on for approval. (Exhibit 230) This was not unusual as Ms. Carter had been the responsible person for securing approval of Ms. Marks RTWs in the past and on Jan 5, 2010, when speaking with LMESC Ms. Marks had learned that the Medical Department would be responsible for approving her leave of absence request.

On June 9, 2010, the day of her surgery, Ms. Marks after being told by Paula Bullock to work **strictly** with CIGNA, Lockheed Martin's third party administrator, in regard to her medical and

LTD sent CIGNA the return to work notice of 7/19/12 along with other documents.  This effort was to ensure all parties were aware of her situation.  After her surgery, Ms. Marks was not released by her physicians.   Yet Lockheed wanted her to return to work on June 16, 2010.  This was impossible because under Lockheed's policy for return to work after STDL, CPS 534 Section 6.27, Ms. Marks had to have her doctor release her for work and they had to certify that she was fit for duty for return to when she returned to work or Ms. Marks would not be allowed to return.  (See Exhibit 1, 6.27)  Under this policy she could not return to work on June 16th  and therefore, needed reasonable accommodation.

2.  _Lockheed Martin  failed to engage in the Interactive Process   as required under  ADA_

An employee has a duty to participate in a good faith interactive process with an employee upon receiving notice of the employee's disability and request for accommodation.[10]   According to federal courts, the interactive process requires a good faith exchange of information between employer and employee, but courts have interpreted the regulations to place the burden on the employer to take the initiative and request additional information that it believes it needs.[11]

Ms. Marks provided documents to Lockheed indicating that she would be returning to work.  She kept Lockheed informed regarding her medical condition.  She complied with the requirement that a good faith exchange of information between employer and employee occur, even though the burden was on the Defendant. The Defendant however, did not engage in the interactive process.  Lockheed never informed Ms. Marks that one of her options would be to take a personal leave of absence.   In fact, after email Robbie Carter, Paula Bullock and Laura Loschiavo and informing them that that her return to work date would be July 12th and July 19th, no one indicating she could take personal leave.  In speaking with LMESC twelve times from

---

[10] _Taylor v. Principal Fin. Group, Inc.,_ 93 F.3d 155, 165 (5th Cir. 1996).
[11] _Taylor v. Phoenixville School Distr._ 184 F.3d 296, 315 (3d Cir. 1999).

Feb 2010 to June 18, 2010 no one indicating an additional option would be personal leave or even vacation time.

## 2. Ms. Marks' Retaliation Claims do not fail

To present a prima facie case of retaliation, Ms. Marks must prove (1) that she engaged in a protected activity (2) an adverse employment action occurred and (3) that a causal link existed between the protected activity and the adverse employment action. Once a plaintiff has established a prima facie case, the burden of production shifts, and the employer must produce evidence that the adverse employment action was taken for a legitimate, non discriminatory reason. If the employer meets that burden, the burden of proof again shifts to the plaintiff, who must show that the protected activity was "but-for" cause of the adverse employment action.

1. Engaged in a protected activity – Report of allegation involving benefit and pay, unfair performance appraisal and racial discrimination

On April 17, 2009 Ms. Marks filed a second Ethics complaint. Paul Cavaliere was assigned the task of investigating the complaint regarding benefit and pay, unfair performance appraisal and racial discrimination. *App*. 211. Cavaliere says in investigating the complaint and he spoke with Robert McGinn and Brad Scianna. *App*. 212. However, both Robert McGinn and Brad Scianna say they did not know about the alleged discrimination and retaliation complaints made to Ethics until after Ms. Marks' employment termination on June 16, 2012. Someone is not telling the truth. What we have here are individuals on the same side, each producing a declaration in conflict with the other's version of the facts. According to the Texas Court of Appeal this simply constitutes conflicting testimony, even though it is from the same person [defendant], and raises a conflict for the fact-finder to resolve.[12]

---

[12] *Waldmiller vs Continental Express, Inc.* 74 S.W.3d 116, 125 (Tex.App. —Texarkana 2002)

**Plaintiff's Response to Brief in Support of Defendant's Motion for Summary Judgment**           **26**

2. <u>Lockheed's management engaged in an adverse employment action.</u>

Ms. Marks alleges that management on November 11, 2010 engaged in an adverse employment action in giving her not only her job to do but at least half of Janet Felton's job and part of Bob McGinn's job that included responsibility for a monthly report that took at least a week to produce and that this action was in retaliation due to her complaint to Ethics.

Craig Weller on October 21, 2009, attempted to address Ms. Marks' lack of promotion.  He indicated to Ms. Marks management had agreed to reshape her job responsibilities to provide her the opportunity to demonstrate success in a role with a large scope. *App*. 172.   Management had agreed to reshape her current job responsibilities and Ms. Marks was open to the reshaping of her job responsibilities in order to be promoted.

However; management used this opportunity to retaliate against Ms. Marks by requiring that she:

1) Keep current job responsibilities which was already a minimal 40 hours per week job

2) Assume the additional job consisting of at least half of a co-worker's duties, which would add an addition 20 hours per week and

3)  Perform an additional job function previously performed by Robert McGinn (which according to McGinn would take upward to a week to perform)

This action from management was in retaliation for the complaint which Ms. Marks made.

Clearly, from Craig Weller's letter, the purpose for the reshaping of Ms. Marks' job responsibilities was to provide management an opportunity to determine her readiness

for promotion to level 3. *App.* 172.  However, in the meeting on December 1, 2009, with Ms. Marks, Brad Scianna, Shannon Clark and himself, McGinn indicated he told Ms. Marks the purpose of the new responsibilities was an opportunity for her growth and development and to bring her in line with the other Level 2 employees. *App.* 160. He further indicated he explained that the purpose of the quarterly performance meetings was to provide her with a status on her performance, not a promotion, and to reiterate that a promotion was never guaranteed. *App.* 160.  This is in contradiction with the memo agreement between Ms. Marks and Craig Weller, but once again in line with Lockheed's denial of Ms. Marks' promotion. It did not matter what work Ms. Marks did, she would not be promoted.

Robert McGinn's own statement indicates just performing the TOAR Overhead Analysis (Miller Math) would take me the better part of a week to do it. *App.* 161. Then he proceeded to criticize Ms. Marks' work on the report as he states that Ms. Marks had a hard time grasping the overhead report (Miller Math), and I consistently told her I was there to help. *App.* 161.  But this is inconsistent with the facts.  Ms. Marks' responsibility for the overhead report could not have begun earlier than November 11, 2009. *App.* 173 and Ms. Marks went out on Short Term Disability leave on December 16, 2009, and as the report is run monthly, McGinn's statement regarding Ms. Marks difficulty grasping the overhead report could only apply to one month of work.

After assumption of the overhead report, Ms. Marks had three (3) weeks to perform not only her existing job but the new daily functional support of the Mechanical Engineering organization, which would require at least 60 hours per week to perform

on top of the hours required for the overhead report.  According to McGinn, the Mechanical Engineering duties that Marks assumed from Felton were slightly less than half of Felton's workload if you include administrative type duties, which were to be discontinued by our group (including Marks). *App.* 159.  It is clear that McGinn was aware of the amount of time and effort required to perform Ms. Marks' current job responsibilities, the overhead report and almost half of Ms. Felton's workload and it he deliberately overload Ms. Marks plate with the intent that she fail.

While management agreed to reshape Ms. Marks' job responsibilities success in this larger role will help management determine your readiness for a future promotion to a level three. *App.* 172 they took this opportunity to retaliate against her due to her complaint to Ethics.

3.  <u>"But for" Ms. Marks engagement in the protected activity the adverse action would not have occurred</u>

To demonstrate causation, the employee "must show that 'but for' the protected activity, the adverse employment action would not have occurred."[13]   Ms. Marks made her complaint to ethics and Paul Cavaliere indicated he contacted Robert McGinn and Brad Scianna regarding the complaint. Yet McGinn states that he was unaware of the substance of the Ms. Marks complaint.  Ms. Marks made her complaint to Craig Weller. Weller got in touch with Ms. Marks' management team to resolve her concerns. According to Weller's memorandum the Ms. Marks' job

---

[13] *Seaman v. CSPH, Inc.,* 179 F.3d 297, 301 (5th Cir.1999).

responsibilities were to be reshaped.  But for Ms. Marks' complaint, her management would not have engaged in the adverse action.

### 3.  Ms. Marks' age, disability, gender and race discrimination claims do not fail.

Ms. Marks discrimination claims is broken down into two categories:

1)  The 2009 failure to promote claims

2)  The 2010 discharge claim  based upon disability and retaliation

The claims are not time barred and both the 2009 failure to promote claims and the 2010 discharge claims survives on the merits.

### a.  Burden of Proof

Federal courts recognize two types of Title VII employment discrimination cases, each requiring different elements of proof. The first type is the "pretext" case, in which the plaintiff's ultimate goal is to show that the employer's stated reason for the adverse action was a pretext for discrimination.[14] The second type of case is the "mixed-motive" case, in which the plaintiff has direct evidence of discriminatory animus. This direct evidence shifts the burden of proof to the employer to show that legitimate reasons would have led to the same decision regardless of any discriminatory motives.[15]

Respondent, Lockheed Martin has correctly characterized the discrimination engaged in by Lockheed as a pre-textual case.  As this is a pretext discrimination case, Plaintiff must first establish a prima facie case of discrimination.  However, this burden is not an onerous one.  To show a prima facie case Ms. Marks must show that (1) she belongs to a protected group (2) she suffered an adverse employment action and (3) similarly-situated employees outside of the

---

[14] *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 252-56, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).
[15] *Price Waterhouse v. Hopkins,* 490 U.S. 228, 244-45, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989); *Starceski v. Westinghouse Elec. Corp.,* 54 F.3d 1089, 1095-99 (3d Cir.1995).

protected class were treated more favorably, or that she was in some other way discriminated against.[16]   The establishment of a prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee.[17]

Once, the plaintiff has established a prima facie case, a burden of production falls to the employer to articulate a legitimate, nondiscriminatory reason for any alleged unequal treatment.[18]   Because proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination,[19] the fact-finder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity [dishonesty, deceit, lies]) may, together with the elements of the prima facie case, suffice to show intentional discrimination.[20] In other words, in appropriate circumstances, it is permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation.[21]   Consistent with this proposition, in a discrimination case, a plaintiff in Texas can defeat a summary judgment motion by presenting evidence raising a fact issue on pretext or by challenging the defendant's summary judgment evidence as failing to prove, as a matter of law, a legitimate, nondiscriminatory reason for the challenged employment action.[22]

   1.  <u>Ms. Marks can establish a prima facie case.</u>

       Ms. Marks can establish a prima facie case. Ms. Marks belonged to two protected groups: She is African-American and she is disabled.  Prior to Dec 8, 2009, Ms Marks suffered three

---

[16] *Okoye v. Univ. of Texas Houston Health Sci. Ctr.,* 245 F.3d 507, 512-13 (5th Cir. 2001); Urbano v. Cont'l Airlines, 138 F.3d 204, 206 (5th cir. 1998).

[17] *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. at 254, 101 S.Ct. 1089.

[18] *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506-07, 113 S.Ct. 2742; *McDonnell Douglas Corp. v. Green,* 411 U.S. at 802, 93 S.Ct. 1817.

[19] *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 147, 120 S.Ct. 2097.

[20] *Id.*; *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 511, 113 S.Ct. 2742.

[21] *Id.*

[22] M.D. Anderson Hosp. & Tumor Inst. v. Willrich, 28 S.W.3d 22, 24 (Tex.2000).

adverse employment actions: (1) she was denied promotion, (2) employees who received who received a PADR of successful contributor were promoted and (3) she was retaliated against for presenting ethical complaints.   After 2009, Ms. Marks suffered an additional adverse employment action: she was terminated from her employment at Lockheed while disabled. When Ms. Marks made Employees who were not disabled and who were outside of the protected class were treated more favorably. Most importantly, Lockheed discriminates against disabled employees who are part of the protected class by maintaining an inflexible leave policy.

2.   <u>Lockheed management use the PADR as a pre-text to preclude promoting Ms. Marks due to her race</u>

Ms. Marks maintain that management deliberately rated her job performance low in an effort to prevent promoting her and that this action was because of her race.   For example in Robert McGinn stated that given Marks' prior track record in the Program Cost group, Scianna and I initially assigned her lower-level work in an effort to make her more successful so that she could rehabilitate her career when she returned to Functional Finance.   *App*. 156-157.   Marks was pretty good at performing the lower level tasks we assigned to her, although I had to answer a lot of questions for her. *App*. 157. She also had a hard time grasping various concepts, but I did not think it was out of the ordinary.   *App*. 157. Yet in Ms. Marks 2007 PADR, Robert McGuinn stated I gave Brenda not one, but two groups to support this year – Software Engineering and Applied Research.   *App*. 168. She had to familiarize herself with the inner workings of two pretty different departments, and has done well, especially considering the short time she's been in this position.   *App*. 168 - As support for management's position, that Ms. Marks was a marginally performing defendant states Ms. Marks was only a mid-level to low-level Level 2 "Successful Contributor" from 2007-2009.   *App*. at 198, 311-312.   Yet in the PADR for 2007, Ms. Marks is classified as a competent performer and valued team player who meets the objectives and

expectation of the position.  *App*. 168. In 2009 PADR, Ms. Marks fully met her objectives in support of the Software Engineering directorate this year. *App*. 170.  What was the expectation of the position? Clearly whatever it was, according to the 2007 PADR Ms. Marks had the necessary abilities and motivation to effectively carry out the responsibilities of [the] current position. *App*. 168.

When it came to defendant's reason for not promoting Ms. Marks to the next level management articulated that the primary differences between the levels were the higher levels were expected to work more independently and with less supervision and to work more analytically. *App*. 156.  Yet according to the 2007 and 2009 PADR, Ms. Marks was appropriately independent. *App*. 168 and 170.

In *Reeves vs Sanderson Plumbing Prods, Inc.* the United States Supreme Court stated the Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it can be quite persuasive..[23]

---

[23] *Reeves vs Sanderson Plumbing*, 530 U.S. 133, 135 (2000)).

**Plaintiff's Response to Brief in Support of Defendant's Motion for Summary Judgment** 33

## V.    CONCLUSION

Ms. Marks had worked for Lockheed Martin for nine (9) years.  She sought accommodation from her employer and rather than accommodating her reasonable request, they fired her.  This is the type of violation ADA was designed to prevent. The Defendant is NOT entitled to summary judgment on this issue.

Ms. Marks was denied promotion.  When you sought assistance internally, she was retaliated against by her management and overloaded with work.  When she sought help outside of the company, her complaint was immediately closed or not responded to by EEOC.  Being the tenacious individual that she is, Ms. Marks would not stop.  She sent emails and letters to Senator Kay Bailey Hutchison, VP Joe Biden, President Obama, EEOC directors, DOL directors, Secretary of Labor, Senator John Cornyn, her representatives, Lockheed Martin's CEO, Lockheed Martin's Ethic department.  Anyone who she believed would help.  Sometimes you just have to stand and fight for what is right and just.

We respectfully request and pray that movant, Lockheed Martins's summary judgment be denied.