UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BRENDA MARKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| VS. | ) | |
| | ) | 3:12-CV-0042-G |
| LOCKHEED MARTIN | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

Before the court is the motion for summary judgment filed by the defendant,

Lockheed Martin ("LM") (docket entry 25).  For the reasons stated below, the

motion is granted.

### I.  BACKGROUND

#### A.  Factual Background

The plaintiff, Brenda Marks ("Marks"), brings this suit to remedy alleged

wrongful termination, retaliation, and discrimination on the basis of age, race, sex,

and disability.  Marks was hired by LM in 2001 as a Level 1 Cost and Schedule

Analyst for LM's Missiles and Fire Control ("MFC") unit, in its Functional Finance

group, located in Grand Prairie, Texas.  *See* Brief in Support of Defendant's Motion for Summary Judgment ("Defendant's Motion") at 3 (docket entry 26).  LM employees are classified by levels ranging from one through eight.  *Id.* at 3 n.1.  The levels determine job functions, amount of supervision an employee receives, and compensation.  *Id.*  Level 1 is an entry-level position in LM's employee classification scheme.  *Id.*  Though Marks had previous finance experience, it appears her entry-level classification was in part due to this experience being divided among different employers.  *Id.* at 3.  In 2003, Marks was promoted to a Level 2 Engineering Planner position.  *Id.*  In June 2005, Marks laterally transferred to a Level 2 Cost/Schedule Analyst position.  *Id.*  In May 2007, her position was reclassified as a Level 2 Multi-Functional Financial Analyst.  *Id.*  She remained in this position until her administrative termination on June 16, 2010.  *See* Appendix in Support of Defendant's Motion for Summary Judgment ("Defendant's Appendix") at 177 (docket entry 27).

In 2006, Marks interviewed for, but did not receive, an open Human Resources position with LM in Pennsylvania.  Defendant's Motion at 4.  Following this unsuccessful interview, Marks lodged a complaint with LM's ethics office, claiming her supervisors, including her manager Judy Parker, had sabotaged her application for the human resources position.  *Id.*  *See also* Defendant's Appendix at 244, 248.  This complaint was subsequently investigated by LM's Grand Prairie

ethics office, deemed unsubstantiated, and closed.  Defendant's Motion at 4.  In late

2006, Marks received a performance review in which she was rated a "Basic

Contributor" by Parker.  *Id*. at 5.  LM's Performance Assessment and Development

Review ("PADR") assigns an employee one of five ratings: Exceptional Contributor,

High Contributor, Successful Contributor, Basic Contributor, or Unsatisfactory.  *Id* at

5 n.3.  Basic Contributor is the second lowest rating and is, according to LM, often

given to employees with significant performance problems.  *Id*.  In December 2006,

Marks, who believed her rating was due to her supervisors' "vindictiveness" over her

ethics complaint, requested and received reassignment from LM's Program Cost

group to its Functional Finance group.  *Id.* at 4-5.  *See also* Defendant's Appendix at

184-85.  At the end of 2007 and 2008, Marks received low to mid-range "Successful

Contributor" ratings from her manager in the Functional Finance group, Robert

McGinn.  Defendant's Motion at 6.  *See also* Defendant's Appendix at 168-71.

During 2008, Marks submitted a proposal for an apprenticeship program to

LM's Technical Operations and Applied Research Innovative Proposal and Suggestion

("TIPS") Committee.  Defendant's Motion at 6.  The Committee agreed to hear

Marks's proposal in early 2009, and after her presentation, instructed her to work

with her local human resources and her management to pursue the proposal.  *Id*. at 7.

After meeting with two human resources representatives, who determined there were

significant problems with the proposal, Marks was instructed to cease work on it.  *Id*.

at 7-8.  In April 2009, Marks lodged another complaint with the ethics office concerning the negative reception of her TIPS proposal, as well as her compensation, performance ratings, and lack of promotion.  *Id*. at 8.  *See also* Defendant's Appendix at 180.  This complaint was investigated by an LM ethics officer in Orlando and dismissed as unsubstantiated.  Defendant's Motion at 8.

In July 2009, after a mid-year review, Marks asked her supervisors what she would need to do to be promoted.  *Id*. at 10.  This inquiry initiated LM's development of a "stretch assignment," an opportunity for Marks to take on additional duties in order to prove her readiness for a promotion to a Level 3 position.  *Id.* at 11.  The details of the stretch assignment were presented to Marks in a memorandum, which she signed on November 11, 2009.  *Id*. at 11-12.  *See also* Defendant's Appendix at 324.1.  Marks met with her supervisors on December 1, 2009, to discuss her progress and some requests she had made in connection with her assignment.  Defendant's Motion at 12.  Her supervisors reminded her that her stretch assignment was not a guarantee of a promotion.  *Id*.  Rather it was an opportunity to demonstrate her readiness for such a promotion.  *Id*.  She was also reminded that the duties she had been given in connection with the assignment were in line with other high functioning Level 2 employees.  *Id*. at 13.  *See also* Defendant's Appendix at 159.  Following this meeting, Marks filed her first charge with the Equal Employment Opportunity Commission ("EEOC") on December 8, 2009.

Defendant's Motion at 13.  *See also* Defendant's Appendix at 262-63.  This charge alleged discrimination and retaliation on the basis of sex and race, due primarily to Marks's lack of promotion.  Defendant's Appendix at 262-63.  The EEOC dismissed Marks's charge without cause to believe any legal violation had occurred and issued a right-to-sue letter the same day Marks filed the charge.  *Id*. at 308.  *See also* Defendant's Motion at 13.

On December 16, 2009, Marks submitted to LM an Employee Request for Leave of Absence form, along with a note from her doctor stating that she needed to be absent from work until December 24, 2009.  *Id*. at 14.  LM granted Marks's request for short-term disability leave ("STDL") and LM's Employee Service Center ("LMESC") sent Marks a copy of Corporate Policy Statement 534 ("CPS-534"), which sets forth LM's policies for leaves of absence.  *Id*.  Given her years of service, LM's policy entitled Marks to up to 26 weeks of STDL.  *Id*.  Additionally, an employee such as Marks could obtain extended medical leave ("EML") following STDL, if the employee were medically certified as continuously disabled and unable to work by the third-party administrator of the Lockheed Martin long-term disability ("LTD").  *Id*.  Cigna is LM's third-party administrator.  *Id*.  If Cigna denies the LTD claim, then the employee has the option to (1) return to work at the end of STDL, (2) be administratively terminated at the end of STDL, or (3) request an

accommodation to remain on an unpaid personal leave beyond STDL, while appealing Cigna's denial of LTD.  *Id*.

Between January and May of 2010, Marks made numerous requests for extensions of her STDL, each of which was approved, up to the maximum 26 weeks (a period ending June 15, 2010).  *Id*. at 15-16.  Marks had also applied for LTD through Cigna, but her application was denied.  *Id*. at 15.  Thus LMESC informed Marks that her employment would be administratively terminated if Cigna did not reverse its decision on LTD and if she did not return to work on June 16, 2010.  *Id*. at 16.

On June 10, 2010, Marks sent an e-mail to Paulette Bullock, one of MFC's employee benefit specialists, requesting that she complete a form certifying her total wages lost due to a medical leave related to an accident injury based on a future June 16, 2010 termination date.  *Id*. at 17.  Bullock responded on June 13, stating in part that she could not complete the form based on a future termination date and that Marks had no lost wages (having been paid on STDL).  *Id*.  After receiving a reply e-mail from a Latricia Kelly on Marks's behalf, Bullock sent Marks an e-mail stating that she needed to work strictly with Cigna regarding Marks's appeal of Cigna's denial of her LTD claim.  *Id*.  Bullock apparently considered this e-mail exchange to confirm Marks's desire to have her employment administratively terminated when her STDL expired, in order not to jeopardize her LTD claim appeal

(an appeal which would automatically be denied if Marks returned to work at LM). *Id*. at 17-18.  *See also* Defendant's Appendix at 6.

On June 15, 2010, Marks called LMESC and was advised that, as of June 16, 2010, her medical benefits would be cancelled due to her administrative termination. Defendant's Motion at 18.  On June 16, 2010, when Marks failed to return to LM, her employment was administratively terminated for failing to return to work after the expiration of her approved STDL without establishing a medical basis for LTD. *Id*.  LM processed Marks's administrative termination on June 17, 2010 and sent her a letter dated June 21, 2010, confirming the administrative termination of her employment and enclosing another copy of CPS-534.  *Id*.  *See also* Defendant's Appendix at 136.

On November 24, 2011, Marks filed another charge of discrimination against LM with the EEOC.  Defendant's Motion at 18.  *See also* Defendant's Appendix at 264.  The charge alleged retaliation and age, sex, race, and disability discrimination with respect to her administrative termination.  *Id*.  This charge was initially dismissed on December 13, 2011 as untimely.  *Id*. at 310.  The EEOC reversed this initial dismissal, though, on July 26, 2012, because it determined that an e-mail sent by Marks on November 24, 2010 to EEOC regional coordinator Katherine Perez contained a minimally sufficient charge regarding her termination.  *See* Plaintiff's Appendix in Support of its Objection to Defendant's Motion for Summary Judgment

at 225 ("Plaintiff's Appendix") (docket entry 29) (Plaintiff's Exhibit 240).  The

EEOC thereafter dismissed the November 2011 charge and issued Marks another

right-to-sue letter on July 26, 2012.  *Id*.

B.  Procedural Background

Marks initially filed a petition on May 7, 2010 in the 193rd Judicial District

Court of Dallas County, Texas.  *See* Notice of Removal Exhibit A (docket entry 1).

This complaint alleged violations by LM of Title VII, the Texas Labor Code, and 42

U.S.C. § 1981.  *Id.* Exhibit 1 at 26-28.  On April 4, 2011, Marks amended her

petition, alleging only state-law claims of discrimination under the Texas Labor Code.

*Id*. Exhibit 14 at 2, 4-6.  Marks filed a second amended petition on December 5,

2011, bringing retaliation and discrimination claims under the Texas Labor Code,

Title VII, the Americans with Disabilities Act ("ADA"), the Age Discrimination in

Employment Act ("ADEA"), and Section 503 of the Rehabilitation Act of 1973.[1]  *See*

Plaintiff's Second Amended Petition ("Petition") (Notice of Removal Exhibit 27)

¶¶ 19-42 (docket entry 1).  On January 5, 2012, LM removed the case to the

Northern District of Texas.  *Id*.  On July 13, 2012, LM filed for summary judgment

on all of Marks's claims, the motion presently before the court.

---

[1]      The court grants defendant's summary judgment motion on Marks's claim based on Section 503 of the Rehabilitation Act of 1973 (Petition ¶¶ 23-24), because it is clear that section does not authorize a private right of action.  See *Rogers v. Frito-Lay, Inc.*, 611 F.2d 1074, 1085 (5th Cir.), *cert. denied*, 449 U.S. 889 (1980).

## II.  ANALYSIS

### A.  Summary Judgment Standard

Summary judgment is proper when the pleadings, depositions, admissions, disclosure materials on file, and affidavits, if any, "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a), (c)(1).[2]  A fact is material if the governing substantive law identifies it as having the potential to affect the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id*.; see also *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001) ("An issue is '*genuine*' if it is real and substantial, as opposed to merely formal, pretended, or a sham.").  To demonstrate a genuine issue as to the material facts, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electric Industrial Company v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986).  The nonmoving party must show that the evidence is sufficient to support the resolution of the

---

[2]        Disposition of a case through summary judgment "reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive."  *Fontenot v. Upjohn Company*, 780 F.2d 1190, 1197 (5th Cir. 1986).

material factual issues in her favor.  *Anderson*, 477 U.S. at 249 (citing *First National Bank of Arizona v. Cities Service Company*, 391 U.S. 253, 288-89 (1968)).

When evaluating a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party.  *Id*. at 255 (citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158-59 (1970)).  However, it is not incumbent upon the court to comb the record in search of evidence that creates a genuine issue as to a material fact.  See *Malacara v. Garber,* 353 F.3d 393, 405 (5th Cir. 2003).  The nonmoving party has a duty to designate the evidence in the record that establishes the existence of genuine issues as to the material facts.  *Celotex Corporation v. Catrett*, 477 U.S. 317, 324 (1986).  "When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."  *Malacara*, 353 F.3d at 405.

## B.  Disparate-Impact Age and Sex Discrimination Claims

Marks brings disparate-impact discrimination claims based on age and sex in her second amended complaint.  *See* Petition ¶¶ 34, 39.  A plaintiff asserting age or sex discrimination must file a timely administrative charge with the EEOC as a prerequisite to bringing suit under the ADEA and Title VII. See 42 U.S.C. §§ 2000e-5(e)(1) & (f)(1); 29 U.S.C. § 626(d); *Conaway v. Control Data Corporation*, 955 F.2d 358, 362 (5th Cir.), *cert. denied*, 506 U.S. 864 (1992); *McClain v. Lufkin*

*Industries, Inc.*, 649 F.3d 374, 385 (5th Cir.), *cert. denied*, __ U.S. __, 132 S. Ct. 589 (2011).  Generally, the EEOC charge must be filed within one hundred and eighty days of the allegedly unlawful action.  42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d)(1)(A).  However, in a deferral state such as Texas, the limitations period for filing a timely EEOC charge is three hundred days from the date of the allegedly unlawful employment practice.  *See* 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d)(1)(B); *Anson v. University of Texas Health Science Center,* 962 F.2d 539, 540 (5th Cir. 1992); *McClain,* 649 F.3d at 385.  Consequently, a Texas employee's Title VII and ADEA claims are normally time-barred if the employee fails to file a sex or age discrimination charge with the EEOC within three hundred days.  *Tyler v. Union Oil Company of California*, 304 F.3d 379, 384 (5th Cir. 2002); *McClain*, 649 F.3d at 385.

The Fifth Circuit has held that "the 'scope' of the judicial complaint is limited to the 'scope' of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."  *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970).  Where a disparate treatment complaint does not allege facts that would reasonably lead to a disparate impact investigation, the later disparate impact claims will not survive the limitations period.  *Pacheco v. Mineta*, 448 F.3d 783, 791-92 (5th Cir.), *cert. denied*, 549 U.S. 888 (2006).  The *prima facie* elements of a disparate impact claim are:  "(1) a facially neutral policy; (2) that, in fact, has a

disproportionately adverse effect on a protected class." See *Pacheco*, 448 F.3d at 791.

Neither of Marks's EEOC charges refers to a facially neutral (or for that matter any)

policy of LM that disproportionately impacts older workers or female workers. *See*

Defendant's Appendix at 262-64. Consequently, neither charge could reasonably be

expected to lead to a disparate impact investigation. Marks's disparate impact claims

are therefore time-barred. LM's motion for summary judgment on Mark's disparate

impact age and sex discrimination claims is granted.

### C. ADA and Texas Labor Code disability-related claims

Marks also brings disability discrimination claims under the ADA and the

Texas Labor Code. *See* Petition ¶¶ 21-25, 26-32, 40-41. The ADA provides that

"[n]o covered entity shall discriminate against a qualified individual on the basis of

disability. . . ." 42 U.S.C. § 12112(a). In order to establish a *prima facie* case of

discrimination under the ADA, the plaintiff must show: (1) that he or she suffers

from a disability; (2) that he or she is qualified for the job; and (3) that he or she was

subject to an adverse employment action. See *Zenor v. El Paso Healthcare System,*

*Limited*, 176 F.3d 847, 853 (5th Cir.1999). The ADA defines "disability" as follows:

> a.   a physical or mental impairment that
>      substantially limits one or more of the major
>      life activities of [an] individual;
>
> b.   a record of such an impairment; or
>
> c.   being regarded as having such an impairment.

- 12 -

42 U.S.C. § 12102(1).[3]

LM argues in its summary judgment motion that there is an absence of a genuine issue of material fact with respect to whether Marks has a "disability" under this statutory definition.  *See* Defendant's Motion at 22.  Thus, since Marks bears the burden of demonstrating that she has a "disability" under the ADA, she must point to "specific facts demonstrating that there is a genuine issue of material fact."  *Equal Employment Opportunity Commission v. Chevron Phillips Chemical Company, LP*, 570 F. 3d 606, 615 (5th Cir. 2009).

The court has combed plaintiff's summary judgment response brief in vain for any argument that plaintiff meets one of the three statutory prongs necessary for a finding that she has a "disability" that would qualify her for the ADA's protections. In various places, plaintiff's summary judgment response refers in a conclusory manner to Marks's "disability," with no citation to any record evidence of such disability.  *See, e.g.*, Brief in Support of Plaintiff's Response to Summary Judgment ("Plaintiff's Response") at 6, 7, 10, 16, 23 (docket entry 30).  The argument section of plaintiff's brief, which attempts to make out a claim that LM failed reasonably to accommodate Marks or to engage in the ADA's required "interactive process" with her, never once identifies plaintiff's "impairment," nor how it "substantially

---

[3]      This definition substantially tracks the definition of "disability" provided in the Texas Labor Code, thus the following analysis is applicable to Marks's state as well as federal law disability claims.  *See* Texas Labor Code § 21.002(6).

- 13 -

interferes" with her life activities. *Id*. at 22-26.  Nor does the brief point to any

evidence that there was a "record" of such an impairment.  *Id*.  Nor does the brief

point to any evidence that Marks was "regarded" as having such an impairment.  *Id*.

This approach, as the defendant has noted, is "wholly insufficient to defeat summary

judgment."  Reply in Support of Defendant's Motion for Summary Judgment

("Defendant's Reply) at 1 (docket entry 36).  See also *Malacara*, 353 F.3d at 405;

Rule 56(c)(1), F.R. C<small>IV</small>. P.  Thus, LM is entitled to summary judgment on all of

Marks's ADA claims.

> D.   Age, race, and sex discrimination claims:  disparate treatment

In her complaint, Marks brings claims of discrimination based on age, race,

and sex.  *See* Petition ¶¶ 35-37, 40-42.[4]  The specific types of age, race, and sex

discrimination that Marks suffered are not entirely clear in the petition.  Aside from a

generic complaint of discrimination in the terms and conditions of employment (¶¶

40-42), Marks does bring a clear claim of failure to promote based on race.  *See*

Petition ¶¶ 35-37.  She expands this in her summary judgment response to include

failure to promote based on age, race, and sex.[5]  *See* Plaintiff's Response at 30.  For

---

[4]      ¶¶ 33-34 and 38-39 of Marks's petition allege age and sex discrimination, but the theory used to support these claims is disparate impact.  The court has ruled on the disparate impact claims previously in this opinion.

[5]      Her summary judgment response also alleges age, race, and sex discrimination claims based on her termination.  Plaintiff's Response at 30.  However, these claims are not properly before the court, as they were not alleged in Marks's

(continued...)

purposes of this opinion, the court will assume that it has properly before it a claim of

failure to promote based on age, race, and sex.  Marks brings these claims under the

ADEA, Title VII, and the Texas Labor Code.  Because the court analyzes the key

elements of the Texas Labor Code discrimination claims in the same manner as it

analyzes the federal law discrimination claims, the following discussion applies to

both the federal and state law sources of Marks's discrimination claims.  See

*Machinchik v. PB Power, Inc.*, 398 F.3d 345, 356 (5th Cir. 2005); *Allison v. City of Fort*

*Worth, Texas*, 60 F.Supp.2d 589, 593 (N.D. Tex. 1999).  The court will address the

age discrimination claim separately, then the race and sex discrimination claims

together.

### 1.  *Age discrimination: failure to promote*

The ADEA prohibits employers from discriminating against employees based

upon their age.  29 U.S.C. § 623(a)(1).  To establish a violation of the ADEA, Marks

must prove intentional discrimination.  See *Armendariz v. Pinkerton Tobacco Company*,

58 F.3d 144, 149 (5th Cir.1995), *cert. denied*, 516 U.S. 1047 (1996).  Because there is

no direct evidence in this case, the three-step *McDonnell Douglas* burden-shifting

---

[5](...continued)
complaint.  See *Cutrera v. Board of Supervisors of Louisiana State University*, 429 F.3d
108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint but, rather,
is raised only in response to a motion for summary judgment is not properly before
the court.").  The only basis for wrongful termination alleged in the complaint was
disability discrimination.  *See* Petition ¶¶ 26-32.  The court has already addressed all
claims based on the ADA.

framework applies.  See *Hanchey v. Energas Company*, 925 F.2d 96, 97 (5th Cir.1990);

see also *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506-11 (1993); *Texas*

*Department of Community Affairs v. Burdine*, 450 U.S. 248, 252-56 (1981); *McDonnell*

*Douglas Corporation v. Green*, 411 U.S. 792, 802-05 (1973).

In the first step, Marks must establish a *prima facie* case of failure-to-promote

discrimination by showing that she:

> "(1) is a member of a protected group; (2) was qualified for
> the position at issue; (3) was discharged or suffered some
> adverse employment action by the employer; and (4) was
> replaced by someone outside [her] protected group or was
> treated less favorably than other similarly situated
> employees outside the protected group."

*Mitchell v. Snow*, 326 F. App'x 852, 854 (5th Cir. 2009).

The parties do not appear to dispute that Marks satisfies the first three prongs

of her *prima facie* case.  However, the defendant argues that Marks has not created a

genuine issue of material fact with respect to the fourth prong, the "similarly

situated" prong.  *See* Defendant's Motion at 24 n.37.  Marks fails in her response to

point to any record evidence that the position she sought remained open and was

ultimately filled by someone outside the protected class or someone younger.  *See*

Plaintiff's Response at 30-32.  Marks makes the unintelligible assertion in her brief

that

> "(w)hen Ms. Marks made Employees who were not
> disabled and who were outside of the protected class were
> treated more favorably.  More importantly, Lockheed

> discriminates against disabled employees who are part of
> the protected class by maintaining an inflexible leave
> policy."

*See* Plaintiff's Response at 32.

Aside from the fact that it is not at all clear how either of these statements

establishes that someone outside the protected class was treated more favorably (or

whether the statements even relate to Marks's age), neither assertion is supported by

references to record evidence.  On a motion for summary judgment, mere allegations

in the non-movant's brief do not constitute evidence sufficient to create a genuine

issue of material fact with respect to an element on which the non-movant bears the

burden proof at trial.  See *Celotex*, 477 U.S. at 324; Rule 56(c)(1)(A), F.R. Civ. P.

LM is therefore entitled to summary judgment on Marks's claim of failure to promote

based on age discrimination.

### 2.  *Race and sex discrimination:  failure to promote*

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et*

*seq.*, prohibits discrimination on the basis of race, color, religion, sex, or national

origin in federal and private employment.  *Fitzgerald v. Secretary, United States*

*Department of Veterans Affairs*, 121 F.3d 203, 206 (5th Cir. 1997).

Because there is no direct evidence in this case, the same three-step *McDonnell*

*Douglas* burden-shifting framework referenced previously applies.  See *Hicks*, 509 U.S.

at 506.  In the first step, the plaintiff must establish a *prima facie* case of

- 17 -

discrimination.  *Id*.  To establish a *prima facie* case of discrimination under Title VII, a plaintiff must show "that she:  (1) is a member of a protected class; (2) was qualified for her position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class, or, in the case of disparate treatment, shows that others similarly situated were treated more favorably."  See *Okoye v. University of Texas Houston Health Science Center*, 245 F.3d 507, 513 (5th Cir. 2001), quoting *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999).

For the same reason that Marks's summary judgment response failed to create a genuine issue of material fact in regard to the fourth prong of her *prima facie* age discrimination claim, it fails to create such an issue with respect to the fourth prong of her race and sex discrimination claims.  Marks points to no evidence of anyone similarly situated (but outside the protected class) who was treated more favorably with respect to the promotion she sought.  LM is thus entitled to summary judgment on Marks's claims of failure to promote because of race and sex discrimination.

### E.  Retaliation claims

Marks brings retaliation claims based on Title VII in her complaint.  Petition ¶¶ 19-22.  Title VII prohibits retaliation against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter."  42 U.S.C. § 2000e-3(a).  A charge of retaliation follows a burden-shifting analysis similar

to racial discrimination.  See *Septimus v. University of Houston*, 399 F.3d 601, 610-11

(5th Cir. 2005).  To establish a *prima facie* case of unlawful retaliation under Title VII,

Marks must demonstrate that (1) she engaged in activity protected by Title VII; (2)

an adverse employment action occurred; and (3) a causal link existed between

participation in the protected activity and the adverse employment action.  See *Baker*

*v. American Airlines, Inc.*, 430 F.3d 750, 755 (5th Cir. 2005).  The parties do not

dispute that Marks has satisfied the first prong.

### 1.  *Adverse employment action*

The Supreme Court has explained that the test of an adverse employment

action is whether "a reasonable employee would have found the challenged action

materially adverse, which in this context means it might well have dissuaded a

reasonable worker from making or supporting a charge of discrimination."  *Burlington*

*Northern and Santa Fe Railway Company v. White*, 548 U.S. 53, 68 (2006) (internal

quotations omitted), quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir.

2006).

In her summary judgment response, Marks points to only one "adverse

employment action" in support of her argument that LM retaliated against her in

violation of Title VII.  Plaintiff's Response at 27.  The alleged adverse action is the

stretch assignment given to her as an opportunity to prove her readiness for

promotion.  *Id*.  Marks attempts to manufacture a genuine issue of material fact from

the fact that the stretch assignment would require additional hours to complete and would saddle her with additional job functions. *Id*. Besides citing no evidence in the record supporting these assertions about her working hours and job functions, Marks makes no argument why a reasonable employee would be dissuaded by such an assignment from making or supporting a charge of discrimination. This is particularly problematic in light of Marks's agreement to the reshaping of her responsibilities in the signed October 21, 2009 and November 11, 2009 memoranda. Defendant's Appendix at 192-93. Given that defendant has offered a plausible, non-adverse reason that Marks's hours and job functions changed (*see* Defendant's Reply at 19), Marks's summary judgment response allegations alone do not raise a sufficient inference of adversity to allow a reasonable juror to conclude that a reasonable employee would be dissuaded by the stretch assignment from reporting discrimination.

Marks also attempts to raise the specter of a contradiction between, on the one hand, management's initial representations to her about the stretch assignment in the October 2009 letter (that it was an opportunity for a promotion) and, on the other hand, the representations made to her at a meeting with supervisors in December 2009, where it was reiterated that a promotion was never guaranteed. Plaintiff's Response at 28. However, given that the letter she signed in October references only the fact that the assignment would allow management to determine "readiness for a

future promotion," Defendant's Appendix at 192, the contradiction is nonexistent. Moreover, it is not clear how such a contradiction, even if it existed, would deter a reasonable employee from making a discrimination charge.

### 2. *Causation*

In order to carry her burden on a retaliation claim, a plaintiff must also point to evidence that demonstrates a causal link between her protected activity and the defendant's retaliatory action.  See *Baker*, 430 F.3d at 754.  Marks's response brief falls short of the mark, in that it references two separate complaints Marks made (one to Paul Cavaliere in LM's ethics office and one to Craig Weller, LM's Vice President of Human Resources and the individual responsible for initiating the stretch assignment) without pointing to any evidence in the record of such complaints. Plaintiff's Response at 29.  The allegations in plaintiff's response are impossible to interpret, because plaintiff does not give any details about either of these complaints that would allow the court to view them as "protected activity."  For example, if Marks was merely "complaining" to Weller that she did not have sufficient opportunity to demonstrate her readiness for promotion, it would be difficult to see how such a complaint would fall within the ambit of protected activity for Title VII purposes.  Marks has thus not shown any link between her protected activities and the stretch assignment.

In light of these facts, LM is entitled to summary judgment on Marks's retaliation claims.

### III.  CONCLUSION

For the reasons stated above, the defendant's motion for summary judgment is **GRANTED**.  Judgment will be entered for the defendant.

**SO ORDERED**.

September 18, 2012.

A. JOE FISH
**Senior United States District Judge**